IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES HARTUNG,

    Plaintiff,

v.                                                                             Civ. No. 23-569 SCY/KK

RONNIE GOMMERT and
MCLANE COMPANY, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING MOTION TO EXCLUDE RETAINED EXPERTS**

Defendants Ronnie Gommert and McLane Company, Inc. move to strike Plaintiff's retained experts, Brian M. Shelley and Mark K. Crawford. Plaintiff's disclosure indicates those experts will testify about Plaintiff's damages and personal injuries caused by the car accident at issue in this case. Doc. 28 at 1-2. Defendants argue the Court should exclude testimony from these experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because some facts supporting their opinions are undermined by medical records which the experts did not review before rendering their opinions. Doc. 46.[1] Among the expert testimony Defendants seek to exclude is testimony related to closed head injuries and cognitive difficulties. Doc. 46 at 4. In his response brief, Plaintiff represents that his experts are not offering any opinions related to a head injury or cognitive difficulties. Thus, Defendants' motion to exclude expert testimony related to head injury or cognitive difficulties is granted. However, the Court denies the remainder of Defendants' motion. Under the circumstances presented, whether a

---

[1] Defendants do not request an evidentiary *Daubert* hearing, and the Court finds one is unnecessary because the motion presents a straightforward legal issue. *See United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) (discussing when a *Daubert* hearing is necessary).

failure on the part of Plaintiff's experts to consider certain records undermines their opinion is a decision best left for the jury after cross-examination.

Rule of Evidence 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. The gatekeeping function involves a two-step analysis. "First, the court had to determine whether . . . the expert was qualified by 'knowledge, skill, experience, training, or education' to render an opinion. *See* Fed. R. Evid. 702. Second, if [the expert] was so qualified, the court had to determine whether her opinions were 'reliable' under the principles set forth under *Daubert*." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In this case, Defendants do not challenge the experts' qualifications. Rather, Defendants argue that the opinions are not reliable because the experts "were not furnished with all Plaintiff's pre-accident medical records and imaging studies." Doc. 46 at 5.[2]

Below is a summary of the inaccuracies Defendants contend exist in the expert reports, along with Plaintiff's responses:

- Defendants note that Plaintiff told the experts he takes ibuprofen for pain and that his wife would not let him take opioid medications, and Plaintiff said he was nervous about them as well. Yet, during his deposition, Plaintiff testified under oath that he was a chronic user of hydrocodone. Moreover, Plaintiff's prescriptions confirm that he filled a prescription for Oxycodone-APAP every month starting in November 2019 through the accident and beyond. Plaintiff was under a pain management contract with Dr. Kandel, whose records the experts did not have, before the subject accident. Doc. 46 at 5-6.

    Plaintiff responds that he was prescribed opioid pain medications in the past. At the time of the IME, however, Plaintiff was no longer taking opioids. Accordingly, when asked about opioids at the IME, Plaintiff's statements were accurate. Doc. 57 at 7.

---

[2] In their motion, Defendants also move to exclude any opinions on "Plaintiff's alleged 'closed head injuries and cognitive difficulties.'" Doc. 46 at 4. In response, Plaintiff stipulates that "Dr. Shelley and Dr. Crawford are not offering any opinions related to a head injury or cognitive difficulties." Doc. 57 at 6. Therefore, the Court grants this portion of Defendants' motion without the need for further analysis.

> Moreover, Dr. Crawford and Dr. Shelley were aware of Plaintiff's use of opioid medications for pain management prior to the accident. Doc. 57 at 7-8 (quoting IME report noting visits for pain management and prescriptions for opioids).

- Defendants argue that over a year after the subject accident, Maximo Santiago M.D. reviewed and referenced a pre-accident MRI and observed that the pre-accident and post-accident findings appear similar. The experts did not have Dr. Santiago's report.

  Plaintiff responds that the experts reviewed an MRI taken approximately two months after the accident, which provided a comparison to MRIs taken prior to the accident. Reviewing another post-accident MRI would not have added any material information. Doc. 57 at 8.

- Defendants note that Plaintiff reported to the experts that he had not experienced any sexual dysfunction before the accident. Yet Plaintiff received treatment for erectile disfunction and low testosterone in November 2017. Doc. 46 at 6-7. Defendants argue that because Plaintiff's experts failed to consider this information, the Court should exclude the experts' testimony regarding prior anxiety and depression. Doc. 58 at 4.

  Plaintiff responds that their experts are not opining on sexual dysfunction and alleged inconsistencies in Plaintiff's statements regarding sexual dysfunction does not render his experts' testimony unreliable. Doc. 57 at 8. Further, the experts noted that Plaintiff reported a history of anxiety and depression that was worsened by the accident. Doc. 57 at 9.

- Defendants argue that Plaintiff told the experts that he had not suffered from lower extremity pain, numbness, or weakness before the accident. However, Plaintiff's neurologist and pain management doctor, Dr. Kandel, whose records are absent from the experts' chronology, documented chronic pain in Plaintiff's legs, weakness, numbness, and difficulty sleeping in May 2019. Moreover, Robert Pinello diagnosed Plaintiff with anxiety and depressive disorder less than four months before the subject accident. Doc. 46 at 6-7.

  Plaintiff disputes Defendants' assertion that he did not tell the experts about pain that existed before the accident and cites evidence to support his contention that his experts knew from medical records and his statement about preexisting pain. Doc. 57 at 9 (citing portions of experts' discussion noting reports of extremity and low back pain prior to the motor vehicle accident).

The circumstances of this case do not present a situation where the underlying data on which experts found their opinions is so unreliable that the experts' opinions should be excluded. Assertions that experts failed to consider all available data or founded their opinions on unreliable data are common fodder for cross-examination and closing argument. But rarely are

such arguments a basis to exclude the experts from testifying at all. "By its terms, the *Daubert* opinion applies only to the qualifications of an expert and the methodology or reasoning used to render an expert opinion. *Daubert* generally does not, however, regulate the underlying facts or data that an expert relies on when forming her opinion." *United States v. Lauder*, 409 F.3d 1254, 1264 (10th Cir. 2005) (citation omitted).[3] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Under *Daubert* and the Federal Rules of Evidence, "[t]o present expert testimony to the jury, a party must show that the methods employed by the experts in reaching their conclusions are based on reliable methodologies, and that their opinions are based on facts sufficiently tied to the case." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). But Defendants neither attack the methods employed nor show that the opinions are based on facts not tied to this case. Defendants do not attack the reliability of the independent medical examination the experts conducted or the medical records the experts did consider. Instead, Defendants argue that, if the experts had considered certain other medical records, their opinions might be different.

Although situations might arise in which an expert's failure to consider certain information makes the expert's opinion unreliable, the primary focus of the admissibility question is on the data the expert had, not the data he did not have. The admission of expert testimony is not an abuse of discretion even where "there may have been considerable evidence contradicting the expert's assumptions" as long as "his assumptions were not without support."

---

[3] The Tenth Circuit noted that Federal Rule of Evidence 702(b), which requires the testimony be based on "sufficient facts or data," is "not to the contrary." *Lauder*, 409 F.3d at 1265 n.5. "As noted in the Advisory Committee Notes to the 2000 Amendments, [the] reference to 'sufficient facts or data' calls for a quantitative rather than qualitative analysis." *Id.*

*Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1524 (10th Cir. 1984), *aff'd on other grounds*, 472 U.S. 585 (1985). In *Quinton v. Farmland Indus., Inc.*, for example, the Tenth Circuit found that although the expert's factual knowledge was incomplete, it was "sufficiently detailed . . . to permit his expression of an opinion as to the cause of the damages allegedly incurred." 928 F.2d 335, 337-38 (10th Cir. 1991). Similarly, in the present case, although Defendants' assertions provide fair grounds for cross-examination of Plaintiff's experts, their assertions are insufficient to support the exclusion of the experts' testimony.

The Tenth Circuit has emphasized that "defendants' complaints regarding [an] expert's personal unfamiliarity with underlying facts and unreliability of third-party information relied upon [go] to [the] weight of [the] expert's testimony, not its admissibility." *Quinton*, 928 F.2d at 338 (citing *Ramsey v. Culpepper*, 738 F.2d 1092, 1101 (10th Cir. 1984)). "[T]he full burden of exploration of the facts and assumptions underlying the testimony of an expert witness [is] squarely on the shoulders of opposing counsel's cross-examination." *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980). "Indeed, a well-accepted way to criticize damages estimates is for a rebuttal expert to testify that, while the expert's report implicitly assumes (or erroneously fails to consider) facts X, Y, and Z, the expert's analysis is seriously flawed if the jury does not accept X, Y, and Z as true." *Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1247 (D. Utah 2022) (internal quotation marks omitted).

The primary case Defendants rely on in support of their argument is *United States v. Heilbron*, No. 15cr2030, 2017 WL 3600733, at *5 (D.N.M. Jan. 11, 2017). Defendants assert that a district court in New Mexico "exclud[ed the] medical expert for lack of reliability, in part, because expert relied on [an] incomplete summary of some medical records." Doc. 46 at 7. This is inaccurate. Defendants quote a portion of the Court's opinion which merely summarizes an

5

argument made by one of the parties: "The United States challenges the reliability of Dr. Gordon's proposed testimony, arguing Dr. Gordon's report is an incomplete summarization of some of Defendant's patients' medical records with virtually no analysis underlying its opinions." *Heilbron*, 2017 WL 3600733, at *5. *Heilbron* does not hold that the expert opinion is inadmissible because of the incomplete nature of the summary. The court excluded the opinion because "certain portions [of the] report are identical to [another expert's] report," because much of the report "focuses on criticizing the Government's expert . . . and conventional medicine in general, rather than opining on matters relevant to this case," and because the opinion "invades the province of the jury [by] render[ing] opinions on issues of law." *Id*. *Heibron* does not engage with, much less provide support for, Defendants' contention that reliance on less than the full set of medical records renders an opinion categorically inadmissible.

Further, more important than an unpublished district court decision is published Tenth Circuit precedent. Such precedent indicates that whether an expert's opinion is unreliable for failure to consider certain data is best presented on cross-examination and resolved by a jury. And, as summarized above, Plaintiff's rebuttals highlight that the experts *did* consider many of the facts Defendants claim they did not consider. Therefore, even if Defendants mounted a legally sufficient attack on the reliability of the data under Federal Rule of Evidence 702(b), the Court also finds that Plaintiff has shown the experts had sufficiently reliable data when forming their opinions. Any apparent contradictions in the record and the expert report are for the factfinder to resolve.

THEREFORE, IT IS ORDERED THAT Defendants' Motion To Exclude The Testimony Of Brian M. Shelley And Mark K. Crawford, Doc. 46, is GRANTED IN PART, such that Plaintiff's experts may not testify about closed head injuries and cognitive difficulties. The

remainder of Defendants' motion is DENIED.

SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent