IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES HARTUNG,

    Plaintiff,

v.                                                                    Civ. No. 23-569 SCY/KK

RONNIE GOMMERT and
MCLANE COMPANY, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR SUMMARY JUDGMENT

Plaintiff Charles Hartung moves for summary judgment against Defendants Ronnie Gommert and McLane Company, Inc. on the issue of liability for the car accident at issue in this case. Doc. 48. Defendant Ronnie Gommert, driving a vehicle owned by McLane Company, pulled out of a gas station parking lot onto a highway. Plaintiff was a passenger in a GMC truck traveling on the highway. Gommert did not yield to the GMC truck, and the two vehicles collided. In opposing Plaintiff's motion for summary judgment, Defendants argue that a material question of fact exists as to whether the GMC truck driver was speeding. Defendants further argue that, if a jury concludes that the GMC truck driver was speeding, such conclusion could cause the jury to find that Gommert did not breach any duty to yield to the GMC truck or that, even if Gommert did breach his duty, he is not 100% at fault for the accident. The Court finds that a reasonable jury could conclude from the evidence Defendants present that the driver of the GMC truck was speeding. Such a reasonable jury could also then conclude, because the GMC truck was speeding, Gommert was not 100% at fault for the accident.

The Court construes the summary judgment motion as a request for a determination that

Gommert is 100% at fault for the accident.[1] Accordingly, the Court DENIES Plaintiff's motion.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

---

[1] Plaintiff also asserts at the end of his reply brief that "[a]t a minimum, Plaintiff is entitled to summary judgment that Mr. Gommert caused or contributed to the accident at issue in this case." Doc. 60 at 6. But Plaintiff does not elaborate on whether the Court can grant summary judgment against a defendant who a reasonable jury could find bears something more than 0% fault and something less than 100% fault. That is, Plaintiff does not explain whether the issue of comparative fault is a liability-stage issue or a damages-stage issue for a jury under New Mexico law. The Court declines to address this issue in the absence of such briefing, and simply holds that the percentage of fault is for the factfinder to determine at trial.

**UNDISPUTED MATERIAL FACTS**

At approximately 1:00 p.m. on October 9, 2020, Ralph Andrew was driving a 2020 GMC truck north on South Riverside Drive in Espanola, New Mexico, with Plaintiff in the front passenger seat. UMF 2.[2] As Plaintiff and Andrew, in the GMC truck, approached the Shell gas station located at 509 South Riverside Drive, Defendant Ronnie Gommert exited the Shell gas station en route to crossing two lanes so that he could enter the left-hand turn lane for northbound traffic. UMF 3; Doc. 55 at 2. Andrew swerved into the left lane in an attempt to avoid a collision. UMF 4. A collision occurred in the left lane of traffic. UMF 5. Following the collision, Andrew drove his truck to the side of the roadway, parked and called 911. UMF 6.

Gommert testified that, at the time he pulled out into the roadway, there was nothing obstructing his view of the lanes of traffic. UMF 7. Gommert did not see the 2020 GMC truck proceeding north in the right lane of traffic prior to pulling into the roadway, and first saw the GMC truck when the vehicles collided in the left lane of travel. UMFs 8, 9. Gommert did not yield to the GMC truck Plaintiff was in. UMF 10.[3]

Crucially, Defendants contend that Andrew was speeding as he approached the Shell gas station. Because the central issue in this motion is whether such evidence suffices to defeat summary judgment, the Court examines it in detail below.

---

[2] The statement of facts is taken from Plaintiff's motion, Doc. 48 at 2-4, and undisputed unless noted otherwise. The Court draws all reasonable inferences in Defendants' favor, as the non-moving parties.

[3] Plaintiff asserts that Gommert "failed" to yield to oncoming traffic. Doc. 48 at 4, UMF 10. Defendants do not dispute that Gommert did not yield to the GMC truck, but explain that is because he did not see any vehicles for which he needed to yield. Doc. 55 at 3 (response to UMF 10, citing Gommert's deposition testimony that he knew "he needed to yield to oncoming traffic, but he did not see any vehicles approaching for which he needed to yield"). Thus, although Defendants do not concede fault, they do not dispute that Gommert did not yield to the vehicle Plaintiff was in.

3

## DISCUSSION

Plaintiff moves for summary judgment on liability, asking the Court to find that Gommert caused, and was at fault for, the car accident. Doc. 48. In response, Defendants contend that evidence Andrew was speeding creates a material question of fact as to whether Andrew breached a duty that contributed to Plaintiff's damages. Doc. 55 at 4. And, even if Andrew did breach a duty, Defendants contend Andrew's speeding reduces Gommert's share of fault under the principles of comparative fault. *Id*. Because a reasonable jury could find either that Gommert did not breach a duty to yield to oncoming traffic that could reasonably be seen, or that Andrew at least bears some fault for the accident, Defendants argue the Court should deny Plaintiff's motion for partial summary judgment on the issue of liability. *Id*.

"The elements of a negligence claim are (1) the existence of a duty running from the defendant to the plaintiff; (2) a breach of that duty based on a reasonable care standard; and (3) the breach of duty is both the proximate and in-fact cause of the plaintiff's damages." *Ross v. City of Las Cruces*, 2010-NMCA-015, ¶ 10, 229 P.3d 1253, 1256. "[B]reach of duty questions are usually reserved for the jury," unless "no reasonable jury would find that the defendant breached the duty of ordinary care or that the breach legally caused the plaintiff's damages." *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶¶ 15, 24, 326 P.3d 465, 471.

Under New Mexico's pure comparative fault system, "concurrent tortfeasors, generally, are severally liable for damages apportioned on the basis of the percentage of each tortfeasor's fault to the total fault attributed to all persons." *Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 34, 827 P.2d 102, 115. Thus, Defendants argue, it is a jury's task to apportion fault between Gommert and Andrew at trial, not a task for the court on summary judgment. Doc. 55 at 4-5. The

4

Court agrees that, unless a reasonable jury could only find one way, this question is inappropriate for summary judgment and must go to the jury.

In reply, Plaintiff does not dispute Defendants' characterization of New Mexico law related to breach of duty and comparative fault. Rather, Plaintiff argues that there is no admissible evidence that Andrew was speeding or that—if he was—his speed contributed to the collision. Regarding Plaintiff's first argument, the Court finds that admissible evidence Andrew was speeding does exist, as examined below. A reasonable jury could conclude from the evidence that, by traveling over the speed limit, Andrew has some comparative fault. That is, a reasonable jury could find under New Mexico's pure comparative fault statute that Gommert bore less than one hundred percent fault for the accident. An overview of the evidence is as follows.

    A.    <u>Medical record</u>

Defendants argue that Plaintiff told one of his medical providers that Andrew was traveling 45 miles per hour at impact. Doc. 55 at 3. Defendants cite an intake form, which has Plaintiff's name printed in handwriting on the top. The following question is printed on the form, along with a handwritten answer:

What was the approximate speed of your vehicle? _45_

Doc. 55-4.

Defendants argue that since the speed limit was 35 miles per hour, this is evidence that Andrew was speeding. Doc. 55 at 5. Plaintiff does not contest that this form reflects an answer from Plaintiff about the approximate speed of the vehicle involved in the accident. Plaintiff also does not contend the evidence is inadmissible.[4] Instead, Plaintiff argues that he was only

---

[4] The medical record involves two layers of hearsay: the record itself and the statement reflected in the record. With respect to the first layer of hearsay, certain forms of hearsay are acceptable

5

guessing when he filled out that form. During his deposition, Plaintiff was questioned about this form because it also reflects his answer that Gommert was traveling at 50 mph when the vehicles collided (somewhat improbable for a car that had just pulled out of a parking lot). Doc. 55-4. As Plaintiff explained in his deposition:

> Q. Did you also tell Dr. Koppel that the other vehicle hit you at 50 miles per hour, then struck directly into the right passenger side?
>
> A. I don't remember saying that, no.
>
> Q. And that's not what happened, right?
>
> A. No. It was hit in the back.
>
> Q. Do you think you were hit at 50 miles per hour?
>
> A. I have no idea. I think I was just taking a guess.

Doc. 60-1 at 3.

Although Plaintiff is free to argue to the jury that he was only guessing when he made this statement, his deposition testimony does not make this assertion. Instead, in his deposition, he simply said that he does not remember making this statement about the accident. The medical records constitute evidence that Andrew was traveling approximately 45 mph at the time of the

---

on summary judgment because "[t]he nonmoving party does not have to produce evidence in a form that would be admissible at trial." *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). The medical record would be admissible at trial if accompanied by the testimony of a records custodian (or by stipulation of the parties as to authenticity). With respect to the second layer of hearsay, Defendants argue that it falls within a hearsay exception because it is a statement made for the purpose of medical treatment. Doc. 55 at 5 (citing Fed. R. Evid. 803(4)). This is debatable. *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir. 1991) ("Details of the injury not necessary for treatment but serving only to suggest fault would not ordinarily qualify as an exception to the hearsay rule under Rule 803(4)." (internal quotation marks omitted)); *United States v. Joe*, 8 F.3d 1488, 1493-94 (10th Cir. 1993) (discussing a similar rule). The Court declines to rule on the more difficult Rule 803(4) issue because the statement is admissible as a non-hearsay statement of a party opponent. It is a "statement . . . offered against an opposing party" that "was made by the party in an individual . . . capacity." Fed. R. Evid. 801(d)(2), (A).

collision. Whether to credit the statement in the medical record or Plaintiff's testimony will be up to the factfinder at trial.

B.    Plaintiff's deposition testimony

Defendants also argue that Plaintiff testified in his deposition that Andrew was speeding prior to the accident. Doc. 55 at 5. The relevant deposition passage is as follows:

> Q. Okay. Do you know how fast Mr. Andrew was going, or Ralph Senior was going?
>
> A. I assume, the speed limit.
>
> Q. And what was that?
>
> A. I don't know. Off the top of my head, it was either 45 or 55, I would think. I had just been with him long enough. He generally doesn't speed.

Doc. 55-3 at 2.

Plaintiff argues that he was only making an assumption or a guess, and a reasonable jury could not find, based on this testimony, that Andrew was speeding. Doc. 60 at 5. Drawing all reasonable inferences in favor of the Defendants, the Court concludes a reasonable jury could find Andrew was travelling as fast as 55 mph. Even excluding this deposition testimony, however, as discussed above, medical record evidence exists that Andrew was going approximately 10 miles per hour over the speed limit.

C.    Expert testimony

Defendants' expert, Matthew Mecham, testified in his deposition that a high rate of speed of Andrew's vehicle could be a contributing factor to the accident:

> So there may have been some contribution on the part of the driver, as well. But we do know that the driver traveled in the neighborhood of around 300 feet post-impact, which is quite a[ ]ways to be traveling, an entire football field. So there may be some issues related to the speed of the GMC that also contributed to the cause of the accident.
>
> . . . .

7

> [T]here could be other contributing factors that may have been related to the speed of the Sierra as it also approached the area of the impact.
>
> . . . .
>
> [I]f the Sierra is traveling at an unreasonable speed as it approached the area of the impact, that it may have been reasonable for Mr. Gommert to pull out, assuming that the vehicle would have been traveling at a -- within the posted speed limit or less.

Doc. 55-2 at 2.

> If the truck is traveling at a high rate of speed, it may be reasonable for him to not functionally see the vehicle because it's so far away from where he is that he doesn't think that it is something that he needs to be looking for. From human factors perspective, when we are -- when we are performing turns such as this into a roadway and you're looking down the road, you're not looking down the road a mile or half a mile or further, you're looking for vehicles that are close enough to you that you expect that they would be a hazard.
>
> If the GMC is traveling at an unreasonably high rate of speed, that may explain why Mr. Gommert doesn't see the vehicle because he doesn't think that it's -- he's not looking functionally down the roadway far enough.

Doc. 55-2 at 3.

In reply, Plaintiff emphasizes that Mecham testified he did not know if Andrew's vehicle was speeding or not. Doc. 60 at 6. The Court agrees that Defendant has not presented any reliable testimony from Mecham that Andrew was speeding. But Defendants need not rely on Mecham for evidence that Andrew was speeding, as the medical record and Plaintiff's testimony provide such evidence.

Given this evidence, the question then becomes what kind of mileage Defendants can get from Mecham's testimony that, *if* Andrew was traveling "at an unreasonably high rate of speed," it may have been "reasonable" for Gommert to pull out when he did because Gommert could not "functionally see the vehicle." The answer to this question is very little mileage. Mecham does not indicate (based on the portions of his deposition the parties have provided) the rate of speed that would constitute "an unreasonably high rate of speed" or attribute any significance to the

8

actual speed Andrew was going (as much as 55 miles per hour in a 35 mile per hour zone). Defendants have thus not shown that Mecham has opined that it would have been reasonable for Gommert to pull out of the parking lot when he did or that the actual speed Andrew was going (as opposed to some undefined hypothetical speed) contributed to the accident. The Court agrees with Plaintiff that "[a]n expert's 'wonderings' about an issue for which he admits he has insufficient information to reach an opinion are not evidence and cannot be relied upon to defeat a motion for summary judgment." Doc. 60 at 6.[5] In connection with the present motion, Defendants have not presented expert testimony *based on evidence in this case*. Therefore, at this point, the value of Mecham's testimony relates to the general points he makes rather than to any specific conclusion based on the evidence of this case.

One of the general points Mecham makes is that, when a person is pulling onto a roadway, that person looks down the road to the point where a vehicle is close enough that it would be a hazard to pull onto the roadway. If a vehicle coming down the road is speeding, that vehicle might create a hazard even though it is farther away than someone pulling onto the roadway might be accustomed to looking. A reasonable jury, hearing this testimony, combined with evidence that Andrew was speeding, could conclude that Andrew's speeding contributed to the accident.

## CONCLUSION

At this stage of the case, the Court must draw all reasonable inferences in favor of the non-moving party, here, Defendants. Gommert testified that he looked both ways but did not see anything coming. Doc. 55-1 at 2. A reasonable jury may accept the evidence discussed above, in

---

[5] To the extent Plaintiff implies a *Daubert* challenge in this one sentence that lacks any citation to authority, the Court rejects it for failure to develop the argument.

conjunction with Mecham's testimony, as circumstantial evidence that the GMC truck was not within the place a reasonable driver would look before he turned because the truck was approaching at an excessive rate of speed. That is, based on evidence that Andrew was speeding, a reasonable jury could conclude that this speeding contributed to the accident and Andrew therefore bears some responsibility for the collision. It is up to the factfinder whether to credit Defendants' evidence and apportion some fault to Andrew at trial.

Plaintiff's Motion For Partial Summary Judgment On Liability, Doc. 48, is DENIED.

SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent