**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CHARLES HARTUNG,

   Plaintiff,

  v.            Civ. No. 23-569 SCY/KK

RONNIE GOMMERT and
MCLANE COMPANY, INC.,

   Defendants.

## <u>ORDER REGARDING MOTIONS IN LIMINE</u>

This lawsuit arises from a car accident that occurred on October 9, 2020, when Defendant

Ronnie Gommert, driving a company car and in the course and scope of his employment for

Defendant McLane Company, entered the road from a gas station parking lot and hit the vehicle

in which Plaintiff Charles Hartung was a passenger. Plaintiff's complaint brings one cause of

action: negligence against Gommert (for which Plaintiff asserts McLane is vicariously liable).

Doc. 1-2 (complaint).

This matter is set for a jury trial commencing October 7, 2024. In advance of trial, the

parties filed several motions in limine, which are now before the Court. "A motion *in limine* is a

request for guidance by the court regarding an evidentiary question, which the court may provide

at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146

(10th Cir. 1995) (internal quotation marks and citation omitted). Several of the motions argue

certain information is not relevant. Evidence is relevant if "it has any tendency to make a fact

more or less probable than it would be without the evidence; and the fact is of consequence in

determining the action." Fed. R. Evid. 401.

## DEFENDANTS' MOTION IN LIMINE (Doc. 72)

In their motion, Defendants move for a Court order instructing Plaintiff, his attorneys, and all witnesses not to mention, at any time during trial, the following matters.

### 1. Uniform Crash Report and Any Statements or Findings by Officer Szabo

Following the car accident, Officer Ladislas Szabo arrived at the scene, where he spoke with Plaintiff, Ralph Andrew (the driver of the vehicle in which Plaintiff was a passenger), and Defendant Gommert. He then summarized these discussions and provided his opinion about the accident in a Uniform Crash Report. Doc. 72-1. Specifically, he opined that Gommert "failed to exercise due care." *Id.* at 3. Defendants move to exclude from trial any reference to the Uniform Crash Report to include any statements or findings by Officer Szabo in the report. Plaintiff does not list the Uniform Crash Report on his exhibit list, Doc. 79, but he does list Officer Szabo on his witness list, stating that Officer Szabo "investigated the accident on behalf of the Espanola Police Department and prepared a police report. He is expected to have knowledge regarding how the accident occurred and Mr. Hartung's complaints of injuries and pain at the scene of the accident." Doc. 68 at 2.

Under New Mexico law, "no accident report shall be used as evidence in any trial, civil or criminal, arising out of the accident." NMSA § 66-7-213(B). Although the Federal Rules of Evidence "generally govern the admissibility of evidence in a diversity lawsuit," state law applies "when it reflects substantive concerns or policies." *Griego v. State Farm Mut. Auto. Ins. Co.*, 839 F. App'x 258, 262 (10th Cir. 2020) (internal quotation marks and citation omitted). The Tenth Circuit, in an unpublished case, found that "Section 66-7-213(B) reflects substantive concerns with respect to the weight a jury may afford a crash report." *Id.* (internal citation omitted). Thus, the court held that § 66-7-213(B) bars admission of accident reports in

subsequent civil trials. *Id.* at 263. Following the Tenth Circuit's guidance, the Court agrees with Defendants that the contents of Officer's Szabo's Uniform Crash Report shall not be admitted for the truth of matters asserted in the report.[1] Indeed, Plaintiff agrees that the Uniform Crash Report and statements Officer Szabo made in the Uniform Crash report are inadmissible at trial. Doc. 101 at 2.

What Plaintiff does not agree with, however, is Defendants' assertion that Officer Szabo is unqualified to provide testimony regarding his investigation of the accident. In their motion, Defendants note Officer Szabo's conclusion of fault in the report and argue that Officer Szabo "has no personal knowledge regarding how the accident occurred, and no evidence exists that he is qualified to or did perform an accident reconstruction." Doc. 72 at 4.

Analysis of this argument involves two parts: personal knowledge and opinion testimony. Officer Szabo is permitted to testify about that which he has personal knowledge. Fed. R. Evid. 602. This includes what he observed when he arrived on the scene and what witnesses told him (to the extent the Federal Rules of Evidence do not otherwise exclude those statements). This also includes what Officer Szabo did, to include whether he issued a citation or a warning in connection with his investigation.

However, elicitation of Officer Szabo's opinions implicates consideration of Federal Rules of Evidence 701 and 702, including consideration of exactly where the line between these two rules lies. The parties did not brief what opinions Plaintiff may seek to elicit from Officer Szabo and whether such testimony would fall under Rule 701 or 702. Thus, the Court does not

---

[1] The parties did not brief and this Order does not address whether a party may make other use of Officer Szabo's report, such as impeaching Officer Szabo with prior inconsistent statements contained in his report.

now consider such questions.[2]

In sum, the Court grants in part Defendants' motion in limine as to the Uniform Crash Report. The contents of Officer Szabo's Uniform Crash Report shall not be admissible at trial for the truth of matters asserted in the report. The Court, however, is not excluding Officer Szabo from testifying and, because the Court has no knowledge of what testimony the parties may try to elicit from Officer Szabo, the Court does not now define the parameters of his testimony.

## 2. Plaintiff's Alleged Traumatic Brain Injury

During his deposition, Plaintiff testified that he suffered a traumatic brain injury during the accident. Doc. 72-2 at 95:17 to 96:10. In the present motion, Defendants seek to exclude Plaintiff from stating that he suffered a traumatic brain injury or an injury of similar nomenclature. Doc. 72 at 5. A lay witness, such as Plaintiff, may not "express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 701. Whether Plaintiff suffered a traumatic brain injury requires the special skill and knowledge of an expert witness. *See, e.g.*, *Montoya v. Ramos*, No. 1:13-CV-00773-WJ-SCY, 2017 WL 5654791, at *1 (D.N.M. Sept. 25, 2017) ("[D]iagnoses of complex mental conditions are generally beyond the common experience of lay persons and require special skill or knowledge.").

Plaintiff, however, has not offered an expert witness who will provide such an opinion. Plaintiff's retained medical experts, Brain Shelley and Mark Crawford, will not offer any opinions regarding head injury or cognitive difficulties. Doc. 65 at 1. And the only treating

---

[2] Indeed, this issue may now be moot, as Defendants have admitted liability for the accident.

provider who told Plaintiff about an alleged traumatic brain injury was his chiropractor, Neil Koppel, Doc. 72-2 at 118:4-9, who Plaintiff has not listed as a witness, Doc. 68.[3] Without such expert testimony, the Court grants Defendants' motion and excludes from trial any reference to Plaintiff having suffered a traumatic brain injury, or similar nomenclature.

Plaintiff does not oppose this outcome "with the clarification that this ruling does not preclude Plaintiff from testifying as to the symptoms he experienced following the accident, including dizziness, cognitive lapses, ear ringing, and headaches." Doc. 101 at 2. Defendants' motion does not seek to exclude such information and the Court's Order does not extend to the exclusion of Plaintiff's testimony regarding his symptoms.

In sum, the Court grants Defendants' motion in limine and excludes from trial any reference to Plaintiff having suffered a traumatic brain injury, or similar nomenclature. This ruling does not extend to Plaintiff's testimony regarding his symptoms.

### 3. "Golden Rule" and Similar Arguments

Defendants move to "prohibit Plaintiff from claiming, suggesting, or arguing that the jury should put themselves in Plaintiff's position, 'send a message' to Defendants, act as the 'conscience of the community,' and the like." Doc. 72 at 7. In response, Plaintiff argues (1) that this is an improper subject for a motion in limine, and (2) that Defendants' argument is too broad. Doc. 101 at 3-4. The Court disagrees on both counts. First, it is proper for Defendants to seek guidance on this issue before it arises at trial—preventing an improper argument from being made in the first instance is more effective than instructing the jury to ignore the argument after it has been made. Second, Plaintiff argues that he should be allowed to present "golden rule"

---

[3] Defendants argue that Dr. Koppel is not qualified to offer an opinion regarding whether Plaintiff suffered a traumatic brain injury, Doc. 72 at 5-6, which the Court need not resolve as Plaintiff does not intend to call Dr. Koppel as a witness.

type arguments to the jury as it pertains to the issue of liability, but acknowledges that "Golden Rule arguments are impermissible when 'the jury is exhorted to place itself in a party's shoes *with respect to damages*.'" Doc. 101 at 3 (quoting *Shultz v. Rice*, 809 F.2d 643, 652 (10th Cir. 1986)). Defendants have conceded liability, and so the only issue at trial will be damages. Because Plaintiff acknowledges such arguments are impermissible at the damages stage, the Court grants Defendants' motion in limine as to golden rule, send-a-message, conscience-of-the-community, and similar arguments.

### 4. McLane's Size or Resources

At the time of the collision, Defendant Gommert was driving a Defendant McLane Company car. Consequently, Plaintiff has sued both Gommert and McLane, bringing a claim of negligence against Gommert and asserting McLane is vicariously liable for McLane's actions. Defendants request Plaintiff be prohibited from discussing or referencing McLane's size or resources. Doc. 72 at 8-9. The Court agrees that such evidence is irrelevant in cases like this, where punitive damages are not sought. Although "evidence of a party's financial condition . . . is admissible for the purpose of fixing the amount of punitive damages," *Ramsey v. Culpepper*, 738 F.2d 1092, 1099 (10th Cir. 1984), Plaintiff does not seek punitive damages, Doc. 1-2 (complaint). The only issue to be resolved at trial is the amount of compensatory damages to which Plaintiff is entitled and McLane's size and resources have no bearing on this issue.

In response, Plaintiff asserts that he is not planning to present evidence regarding the wealth or assets of McLane, but that Defendants' request to exclude information about McLane's size and resources is too broad. Doc. 101 at 4. That is, Plaintiff asserts that he is entitled to "provide the jury with background information on a named defendant, including the nature of the business conducted by McLane, where that business is conducted, and what work Mr. Gommert

was performing for McLane Company in New Mexico," which is information that could arguably fall under the "size and resources" category. *Id.*

But such information is not relevant to the remaining issue in this case: the damages Defendant Gommert's negligence caused. Plaintiff has offered no theory of liability against Defendant McLane other than vicarious liability and so evidence about what McLane does or does not do, or did or did not do, has no bearing on the issue that will be before the jury. That is, Plaintiff's case does not include any claims, such as inadequate hiring or training, that would make information about Defendant McLane's business relevant.

The Court therefore grants Defendants' motion in limine as to references to McLane's size and resources.

**5. Defendants "Do Not Care" About Plaintiff or "Do Not Accept Responsibly"**

Defendants move to "prohibit Plaintiff from stating or claiming that Defendants 'do not care' about Plaintiff or that Defendants 'have not accepted responsibility' for the subject accident." Doc. 72 at 9. The Court agrees that such arguments are irrelevant. Plaintiff brings a single count for negligence and whether Defendants care about Plaintiff or have accepted responsibility is not relevant to determining Plaintiff's damages. This is particularly true in light of the fact that Plaintiff is not asking for punitive damages and brings no bad faith claim, such as alleging bad faith failure to investigate or settle.

In response, Plaintiff argues that this is an improper subject for a motion in limine and that counsel has broad latitude regarding what arguments to make at trial. Doc 101 at 3-4. The Court agrees that counsel should have broad latitude as to how they present arguments that relate to issues before the jury. This broad latitude, however, does not extend to making arguments that do not relate to issues before the jury. Arguments such as Defendants "do not care" about

Plaintiff or "have not accepted responsibility" would be proper if punitive damages were at issue. Given that punitive damages are not at issue, however, arguments designed to assign moral culpability to Defendants are irrelevant and prejudicial. Defendants' motion in limine to preclude such arguments is therefore granted.

### 6. Plaintiff's Offer to Dismiss Gommert

While the parties were preparing the pretrial order, Plaintiff offered to dismiss Defendant Gommert from the lawsuit without prejudice, which Gommert declined. Plaintiff also filed a motion to dismiss Gommert without prejudice, Doc. 80, which is pending before the Court. In their present motion, Defendants seek to exclude from trial any reference to Plaintiff's offer to dismiss Gommert. Doc. 72 at 11. The Court agrees with Defendants that Plaintiff's offer to dismiss Gommert is irrelevant to the issue at trial—Plaintiff's damages.

Plaintiff, for his part, argues that if Gommert is not dismissed from the case, Plaintiff "should be permitted to present evidence that there is no claim for damages against Mr. Gommert individually, that Mr. Gommert is not responsible for payment of any damages award, that Plaintiff offered to dismiss Mr. Gommert as a defendant, and that Mr. Gommert chose to remain a named defendant in this case." Doc. 101 at 5. But, again, evidence regarding who will pay a damages verdict is irrelevant to the question before the jury—the amount of those damages. The Court prohibits Plaintiff from offering evidence that Gommert rejected Plaintiff's offer to dismiss him. Such evidence could lead to jury confusion as to the distinction between dismissal with prejudice and dismissal without prejudice.

For these reasons the Court grants Defendants' motion in limine as to references to Plaintiff's offer to dismiss Gommert.

## PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff likewise filed a series of motions in limine, seeking an order "precluding Defendants, their witnesses and counsel, from making any references or argument, or presenting or eliciting any evidence or testimony from any witness or otherwise" regarding several topics. Doc. 73 at 1.

### 1. Misuse of Narcotic Drugs (Doc. 73)

Approximately two years before the subject accident, Plaintiff underwent bilateral hip replacements and was prescribed narcotics to help manage pain both before and after the surgeries. Plaintiff's neurologist, Dr. Kandel first prescribed him narcotics in May 2019 and, in August 2019, his hip surgeon also prescribed narcotics. After Plaintiff filled both prescriptions, Dr. Kandel noted in a record that, "We discussed [Plaintiff's] narcotic use and his violation of the narcotic agreement." Doc. 73-1. Plaintiff explained at his deposition that he filled both prescriptions from two different doctors, not knowing that doing so would be a violation of his narcotics agreement. Doc. 73-2 at 183:1-21. Defendants have identified in their exhibit list Dr. Kandel's record, as well as pharmacy records, showing Plaintiff filled both narcotics prescriptions for several weeks in 2019. Doc. 71. Thus, in the present motion, Plaintiff seeks to exclude from trial any evidence suggesting that he misused narcotic pain medication in the past, including the violation of his narcotics agreement and the pharmacy records showing that he filled two prescriptions. To be clear, Plaintiff is not seeking to exclude evidence that he used narcotics prior to and after the accident in this case, only evidence that he *misused* narcotics.

Plaintiff argues that any alleged misuse of narcotics is irrelevant to the case because "there is no indication from any witness or in any medical record that Plaintiff was drug seeking or misused or abused narcotic medication" and that "[n]ot a single witness has testified that the

alleged misuse of narcotics has any bearing on any issue in this case." Doc. 73 at 3. Defendants, on the other hand, argue that Plaintiff's violation of the narcotics agreement is evidence of the level of pain he was experiencing before the subject accident. Doc. 81 at 2.

Plaintiff has alleged that, as a result of the car accident with Defendant Gommert, he suffered medical expenses, mental and physical impairment, and pain and suffering. Doc. 1-2 at 3. Plaintiff's complete medical history, including information about narcotics taken for pain management just one year prior to the subject accident, is relevant in determining his damages. Thus, the pharmacy records showing the amount of prescription narcotics that Plaintiff filled is relevant.[4] However, evidence that Plaintiff violated a narcotics agreement, or that he misused narcotics, is not relevant in evaluating his prior injury. Defendants argue that "Plaintiff's violation of his narcotics agreement before the subject accident is evidence regarding the quantity and strength of the narcotic pain medication that Plaintiff was receiving at that time." Doc. 81 at 2. However, evidence of the quantity and strength of Plaintiff's pain medication is illustrated by the pharmacy records, which show the quantity and strength of his pain medications. Although evidence that Plaintiff sought more narcotics than his agreement permitted might tend to provide some additional evidence about Plaintiff's pain level during this time, the additional probative value of such evidence is minimal. That minimal probative value is substantially outweighed by the danger of unfair prejudice that would result to Plaintiff if a jury inferred from such evidence that Plaintiff was an abuser of narcotic medication. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

---

[4] The Court disagrees with Plaintiff's characterization that such pharmacy records, standing alone, are necessarily evidence of drug misuse.

For these reasons, the Court grants in part and denies in part Plaintiff's Motion to Limine No. 1 To Exclude Evidence Implying That Plaintiff Charles Hartung Misused Narcotic Drugs In The Past (Doc. 73). Evidence of the narcotic prescriptions Plaintiff filled is not excluded, but evidence or reference to any "misuse" of narcotics, including the violation of his narcotics agreement, is excluded.

## 2. Bolstering (Doc. 74)

Defendants disclosed Dr. Christopher Taylor as a witness who will testify "regarding his comprehensive review and analysis of the medical records, radiological images, and other case materials along with his opinions regarding Mr. Hartung's claimed injuries in accordance with his February 5, 2024 report." Doc. 70 at 2. They also disclosed Matthew Mecham as an "accident reconstructionist and biomechanical engineer who will testify regarding his comprehensive review and analysis of the evidence in this case along with his opinions regarding the accident and claim injuries in accordance with his February 15, 2024 report." *Id.* Plaintiff asserts that during Mr. Mecham's deposition, defense counsel "attempted to have Mr. Me[cham] improperly bolster Dr. Taylor's opinions on the causation of Mr. Hartung's injuries," Doc. 74 at 1, with the following interaction.

> Q. In your experience, as we look at Dr. Taylor's opinions which you enumerated in your report, based on your review of -- from a biomechanical perspective, do any of Dr. Taylor's opinions seem surprising to you?
> . . .
> A. I -- I have to say I've – I've reviewed a lot of medical records throughout the course of -- of my career, and I've looked at some related to this accident as well. I looked at Dr. Taylor's findings and found them to be reasonable to me from a biomechanical perspective. Obviously, I'm not a medical doctor, and I'm not reaching opinions about those issues, but what he describes is actually pretty consistent with what we see in the published biomechanical literature for human volunteers that have participated in these kinds of tests.

Doc. 74-1 at 84:6-22. In the present motion, Plaintiff seeks to exclude from trial any testimony from Mr. Mecham that vouches for or bolsters the opinion of Dr. Taylor.[5] Doc. 74.

"Although an expert may rely on other witnesses' testimony or other expert's conclusions to form an opinion, an expert cannot merely reiterate, vouch for, or bolster the opinions of someone else." *Soto-Gonzalez on behalf of AMS v. Drs' Ctr. Hosp.*, No. 20-CV-0431(GMM), 2024 WL 753565, at *8 (D.P.R. Feb. 23, 2024) (internal citations omitted). Here, Defendants assert that Mr. Mecham "may testify that his conclusions are consistent with Dr. Taylor's opinions." Doc. 82 at 2. Defendants argue that "consistency does not constitute impermissible vouching." Doc. 82 at 3 (citing *United States v. Chapman*, 59 F. Supp. 3d 1194, 1221 (D.N.M. 2014)).

The Court agrees that the excerpted deposition testimony consists of improper bolstering (i.e., that Dr. Taylor's opinion is reasonable and consistent with published literature), and any such testimony shall be excluded from trial. But separately from that, Defendants may present the testimony described in their response concerning the consistency of one expert opinion with another (i.e., that Mr. Mecham's opinion is consistent with Dr. Taylor's opinion). The Court therefore grants Plaintiff's Motion in Limine No. 2 To Exclude Improper Bolstering (Doc. 74) to the extent that Mr. Mecham may not bolster the opinions of Dr. Taylor, but clarifies that any party may elicit testimony from an expert as to whether that expert's testimony is consistent or inconsistent with the testimony of another expert.

---

[5] The request for relief in Plaintiff's motion is much broader: he seeks an "order precluding Defendants from eliciting any expert testimony that improperly reiterates, vouches for, or bolsters the opinions of another expert witness." Doc. 74 at 1. Plaintiff's motion, however, only discusses Mr. Mecham's bolstering of Dr. Taylor's opinion and so the Court will likewise limit its present order.

### 3.  Medical Billing (Doc. 75)

Plaintiff seeks a Court order finding that the appropriate measure of damages for his medical expenses is the billed amount, not the paid amount that may include portions written off pursuant to agreements between his medical providers and his health insurance. Doc. 75 at 1. In support of this argument, Plaintiff cites New Mexico's collateral source rule. In New Mexico, "the collateral source rule is an exception to the rule against double recovery," which holds that "compensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 48, 301 P.3d 387, 400-01 (internal quotation marks and citation omitted). That is, "if a plaintiff is compensated for his or her injuries by any source unaffiliated with the defendant, the defendant must *still* pay damages, even if this means that the plaintiff recovers twice." *Id.*

The Court applies New Mexico's collateral source rule because, although the Federal Rules of Evidence "generally govern the admissibility of evidence in a diversity lawsuit," state law applies "when it reflects substantive concerns or policies." *Griego v. State Farm Mut. Auto. Ins. Co.*, 839 F. App'x 258, 262 (10th Cir. 2020). And the collateral source rule reflects such a substantive policy. *See Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006) ("The admissibility of evidence in diversity cases in federal court is generally governed by federal law. Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called substantive state rules of evidence, such as the parole evidence rule, the collateral source rule, or the statute of frauds.") (citing *Macsenti v. Becker,* 237 F.3d 1223, 1241 (10th Cir. 2001)); *see also Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1257 n.2 (D.N.M. 2006).

Although New Mexico appellate courts have not addressed the specific issues in this case—whether the collateral source rule applies to negotiated contractual write-offs by a health

insurer—judges in this District have reasoned that the "collateral source rule's development in New Mexico case law reflects New Mexico courts' commitment to the rule's policy and legal underpinnings and strongly suggests that New Mexico courts would apply the collateral source rule to medical expenses written off or adjusted by a health care provider . . . ." *Pipkins*, 466 F. Supp. 2d at 1257 (considering the collateral source rule as applicable to Medicare write-offs); *see also Fairres v. Byrne*, No. 8-CV-1183 WJ/ACT, 2010 WL 11596239, at *2 (D.N.M. June 8, 2010) (applying *Pipkins* to reach the same conclusion as to Medicare wrote-offs); *Felts v. Bd. of Cnty. Commissioners of Valencia Cnty.*, No. 13-CV-1094-MCA/SCY, 2017 WL 3267742, at *5 (D.N.M. July 31, 2017) (applying the collateral source rule to contractual write-offs with Medicaid and holding that "the jury's determination of the reasonable value of Plaintiff's health care expenses should be based on a presentation of the amount billed, rather than the amount paid by Medicaid on Plaintiff's behalf"); *Williamson v. Metro. Prop. & Cas. Ins. Co.*, No. 1:15-CV-958 JCH/LF, 2018 WL 1787510, at *4 (D.N.M. Apr. 12, 2018) ("Having considered New Mexico law on the collateral source rule generally, and the authority from the Tenth Circuit and other courts, this Court concludes that the New Mexico appellate courts are likely to apply the collateral source rule to the situation here and would exclude evidence of the amount Plaintiff's medical provider wrote off pursuant to an agreement with Plaintiff's health insurer."); *Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1059 (10th Cir. 2013) (applying the collateral source rule to write-offs reflected in the plaintiff's medical bills as negotiated by Wyoming Workers' Compensation).

For the reasons articulated by these courts, this Court agrees that the collateral source rules applies to contractual write-offs an insurer negotiated. Plaintiff's medical expenses are the amount billed, not the amount paid or a negotiated reduction of the amount billed. Accordingly,

Defendants may not present evidence that the paid amount of a bill, or negotiated reduced amount of a bill, is the appropriate measure of Plaintiff's medical expenses.

In so ordering, the Court makes no finding as to the testimony of Defendants' expert, John Schneider, who is expected to testify about whether Plaintiff's medical bills are reasonable. Such testimony does not involve a discussion of the amount paid for medical bills after an insurance contractual write-off, but challenges the reasonableness of the amount billed. *See* Doc. 83 at 2 (Defendants' response, explaining that Dr. Schneider's "methodology calculates the reasonable expense of Plaintiff's medical treatment without considering whether the medical bill was paid, who paid the medical bill (if paid), or what amount was paid"); Doc. 83-1 at 6 § 3.2 (Dr. Schneider's expert report, confirming that his methodology "uses only billing and charge data . . .; there is no reliance upon data pertaining to insurance rates or paid amounts"); *see also Williamson*, 2018 WL 1787510, at *4 ("The Court's ruling [regarding the collateral source rule's applicability to contractual write-offs] nevertheless does not prevent Defendant from introducing evidence that the reasonable value of medical services is not reflected by the billed amounts or that chargemaster rates are generally inflated."). Plaintiff did not move to exclude the testimony of Dr. Schneider and the reasonableness of medical bills is a proper subject for expert testimony. *Williams v. United States*, No. 17cv344, 2019 WL 5395349, at *6-7 (D.N.M. Oct. 22, 2019). Accordingly, the Court's holding regarding the collateral source rule does not impact Dr. Schneider's expected testimony.

In sum, the Court grants Plaintiff's Motion in Limine No. 3 That Billed Medical Expenses Are The Appropriate Measure of Damages (Doc. 75). Any evidence that the paid amount of a bill, which includes an insurance contractual write-off, is the appropriate amount of damages (as opposed to the billed amount), is excluded. This ruling does not extend to evidence,

including testimony from Dr. Schneider, regarding the reasonableness of the billed amount.

### 4.   Letter of Protection (Doc. 77)

Plaintiff asserts that, following the subject accident, he "did not have the financial resources to obtain the necessary medical treatment" and so some of his medical providers "agreed to provide services pursuant to a letter of protection, i.e. an agreement that they would provide services and that [Plaintiff] would reimbursement them at the conclusion of the lawsuit." Doc. 77 at 1. In other words, "[a] letter of protection ('LOP') is a letter sent to a medical professional by a personal injury lawyer representing a person injured in an auto accident, work injury, or fall. An LOP guarantees payment for medical treatment from a future lawsuit settlement or verdict award." *Walker v. Spina*, No. CIV 17-0991 JB/SCY, 2019 WL 538458, at *3 n.1 (D.N.M. Feb. 11, 2019). Plaintiff also explains that "he had difficulty finding a medical provider in Florida who would treat him under a letter of protection from an out-of-state law firm and that he [] sought assistance in finding medical care providers from his attorneys," who helped him locate Dr. Koppel. Doc. 77 at 4. Plaintiff seeks an order excluding any reference at trial about him having received medical treatment under a letter of protection or that his prior counsel helped him locate a medical provider in Florida who would accept a letter of protection. Doc. 77.

As to a letter of protection, Plaintiff argues that *when* the costs of his medical treatment will be paid is not relevant to the issue of damages. Although *when* a medical provider will be paid may not be relevant, *if* the medical provider will be paid is relevant. A letter of protection is not just an agreement to pay medical bills later, but an agreement, sent by a plaintiff's counsel, that the medical bills will be paid out of any settlement or plaintiff's verdict in the lawsuit. For the medical provider, it creates an interest in the outcome of the litigation and, therefore, a

16

potential source of bias that a defendant can use to call the medical treatment and diagnosis into question.[6]

Plaintiff also argues that evidence of a letter of protection is inadmissible under New Mexico law. He points to New Mexico Uniform Jury Instruction No. 13-208, which provides that "[t]he possible existence of any insurance or employment-related benefits has no bearing on whether a defendant was negligent or on the amount of any damages that may be awarded to the plaintiff." The existence of UJI 13-208, however, counters rather than supports Plaintiff's argument regarding the admissibility of the letter of protection. First, a letter of protection is not insurance; instead, it is an agreement for delayed payment of bills. Second, to the extent Plaintiff's argument is that the admission of evidence about the letter of protection serves as the catalyst for admission of evidence about whether Plaintiff had insurance, UJI 13-208 will instruct the jury that, in determining Plaintiff's damages, whether Plaintiff had health insurance is not a relevant consideration.

Plaintiff asserts that evidence of a letter of protection is also inadmissible under the collateral source rule. As discussed above, "[t]he classic statement of the collateral source rule is that compensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer." *Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 48, 301 P.3d 387, 401 (internal quotation marks and citation omitted). Plaintiff offers no authority to support the conclusion that a letter of protection fits into this type

---

[6] If Plaintiff chooses to offer an explanation as to why he sought a letter of protection, such testimony is also subject to cross-examination. In the present motion, Plaintiff asserts that he sought a letter of protection because he could not otherwise afford the medical treatment he obtained. Doc. 77 at 1. If Plaintiff offers the same explanation at trial, Defendants are entitled to attempt to impeach this testimony by questioning Plaintiff about whether his health insurance provided him the ability to obtain such medical treatment despite the financial limitations Plaintiff claims to have had at the time.

of collateral source benefit and the Court is aware of no such authority. On the contrary, a letter of protection is simply a deferred payment, not an agreement with a collateral source to pay or reduce the medical bill. Indeed, in Plaintiff's brief, he defines the collateral source rule according to the Restatement (Second) of Torts: "the collateral rules applies to any benefit received by a plaintiff from a source other than the defendant *that covers all or part of the harm caused by defendant*." Doc. 77 at 2 (citing Restatement (Second) of Torts § 920A) (emphasis added). But a letter of protection does not cover all or part of the harm caused by defendant, it simply defers payment.

Lastly, Plaintiff argues that evidence of a letter of protection would be unfairly prejudicial under Federal Rule of Evidence 403. He argues that "Defendants should not be permitted to exploit the fact that [Plaintiff] did not have the financial resources to obtain necessary treatment for the injuries received in the accident to argue that medical providers who provide treatment pursuant to letters of protection are biased," and that such information does not "outweigh" the unfair prejudice. Doc. 77 at 3. Rule 403, however, provides that "[t]he court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice . . . ." Fed. R. Evid. 403 (emphasis added). To the extent Plaintiff's financial condition created the need for a letter of protection, which in turn caused his doctors to have a financial interest in the outcome of the litigation, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.

Consider the probative value. Any of Plaintiff's doctors providing treatment under a letter of protection unquestionably have a financial stake in the outcome of the litigation. If the jury rejects the testimony of Defendants' expert on the reasonableness of medical bills and fully compensates Plaintiff for the amount his doctor billed, Plaintiff's doctors stand to make more

money. Further, a doctor who does not know whether he or she will be paid at the end of litigation might attempt to mitigate the risk of nonpayment through higher bills or more treatment. The jury is entitled to take a doctor's stake in the litigation into account when determining the reasonableness of that doctor's billing and treatment. The truth-seeking function of our judicial system is undermined whenever a jury is deprived of evidence of potential bias.

Weighed against the probative value of this evidence is the possibility that a jury would be inclined to award Plaintiff less damages because he obtained medical treatment through a letter of protection—a course Plaintiff's limited financial means forced him to take and that someone with greater financial means would not had to have taken. That Plaintiff's limited financial means may have dictated a certain course, however, does not remove the potential bias of a doctor who agrees to join Plaintiff on this course. Evidence regarding the letter of protection will assist the jury in evaluating the reasonableness of Plaintiff's medical bills and treatment. It is relevant to the central issue of this case—Plaintiff's damages—and its probative value is not substantially outweighed by the danger of unfair prejudice.

Turning to the assistance of Plaintiff's counsel in finding a provider, Plaintiff argues that such information is irrelevant. As with evidence regarding a letter of protection, the Court disagrees. Evidence that Plaintiff's prior counsel helped him find a provider, or referred him to a provider, is relevant to show potential bias and therefore relevant in evaluating Plaintiff's damages.

Plaintiff also argues that, even if relevant, such evidence should be excluded under Rule 403 because "[a] diversion into how Plaintiff located Dr. Koppel will cause undue delay, divert the jury from the actual issues in the case, waste time at trial, and potentially run afoul of both the prohibition on disclosure of insurance coverage and the collateral source rule." Doc. 77 at 5.

For the same reasons discussed more fully below, the Court rejects Plaintiff's arguments regarding disclosure of insurance coverage and the collateral source rule. Finally, it is not clear that evidence about how Plaintiff located Dr. Koppel would be time consuming or distract the jury from the issue before it. To the contrary, Plaintiff already intends to present testimony about Dr. Koppel and background information about how the relationship between a plaintiff and a medical provider began is not atypical.[7] Therefore, it does not appear that such evidence would create an undue delay or waste time.

For these reasons, the Court denies Plaintiff's Motion in Limine No. 5 to Exclude Evidence That Some Of The Medical Care In This Case Was Provided Under Letters Of Protection Or That Counsel Assisted Plaintiff In Locating A Medical Provider Who Would Accept A Letter Of Protection (Doc. 77).

### 5.  Collateral Source Evidence (Doc. 76)

In combination with his Motion in Limine No. 3 regarding the appropriate measure of medical damages, Plaintiff also moves to exclude from trial any references to his receipt of collateral source benefits, including the amount of benefits paid. Doc. 76. Specifically, Plaintiff asserts that some of his "expenses for treatment of injuries received in this accident were paid by his health insurance and some were paid under an auto insurance policy purchased by the owner of the vehicle in which [Plaintiff] was a passenger" and he seeks to exclude from trial any reference to either benefit. Doc. 76 at 4. For the same reasons discussed above, the Court agrees that the collateral source rules applies to exclude evidence of the amount of medical bills an insurer paid. Indeed, in response, Defendants assert that they "do not plan to argue that Plaintiff

---

[7] Here, Plaintiff asserts that his prior counsel had no relationship with Dr. Koppel, had never referred him other clients, and was not involved in his treatment decisions. Doc. 77 at 4. This indicates that testimony about how Plaintiff located Dr. Koppel is likely to be short.

should recover less in damages because some of his medical providers were paid by health or other insurance." Doc. 85 at 2. Consistent with this, evidence of the amount of Plaintiff's medical bills that an insurer paid do not bear on the issue that will be before the jury—the extent of Plaintiff's damages. Defendants are barred from presenting such evidence.

Plaintiff's motion in limine does not stop here, however. In addition to arguing Defendants should be precluded from presenting evidence about what an insurer paid, Plaintiff argues Defendants should be precluded from presenting evidence that Plaintiff had insurance at all. Plaintiff asserts that "the fact that [he] received such benefits is entirely immaterial to any issue in this case, and mentioning or referring to these benefits at trial, either directly or indirectly, will be harmful and unfairly prejudicial to Mr. Hartung pursuant to Rule 11-402 and 403."[8] Doc. 76 at 4.

The Court agrees that, unless a door is opened that makes the availability of insurance proceeds relevant, the availability of such proceeds is inadmissible. Here, depending on Plaintiff's testimony, such a door may be opened. As set forth above, Plaintiff obtained some medical treatment through letters of protection and, argued in one of his motions in limine that he did so because he had no other means to pay for such medical services.[9] If Plaintiff proffers such testimony at trial, it will be subject to cross-examination. That is, if Plaintiff testifies that he sought treatment under a letter of protection because he did not have the financial means to pay

_____

[8] Plaintiff cites 11-402 and 11-403, which are the New Mexico Rules of Evidence's counterparts to Federal Rules of Evidence 402 regarding relevance, and Rule 403 regarding unfair prejudice. In this diversity case, the Court applies Federal Rules of Evidence 402 and 403, which are substantially the same as New Mexico Rules of Evidence 11-402 and 11-403.

[9] Plaintiff stated in a motion in limine that he "did not have the financial resources to obtain necessary medical treatment for the injuries received in the accident at issue in this case." Doc. 77 at 1. The Court is unaware of any similar statement Plaintiff made during his deposition and a statement from Plaintiff's counsel in a motion is different than a statement in a deposition.

for treatment, Defendants are entitled to cross-examine him as to any available insurance coverage.

Plaintiff alleges he will suffer unfair prejudice if evidence that he had insurance is presented because knowledge of his insurance will lead the jury "to modify or reduce the amount of damages to which Plaintiff is entitled from Defendants based on the erroneous belief that he has already been compensated for his injuries, or that damages have already been paid on his behalf." Doc. 76 at 5. Any such concern can be cured by a jury instruction. Indeed, both parties include as part of their proposed jury instructions New Mexico Uniform Jury Instruction No. 13-208, which provides that "insurance has no bearing on the amount of damages that may be awarded." Doc. 90 at 8; Doc. 91 at 7. Any potential prejudice Plaintiff may suffer is thus limited and does not substantially outweigh the probative value. *See* Fed. R. Evid. 403.

In sum, Plaintiff's Motion In Limine No. 4 To Exclude Collateral Source Evidence (Doc. 76) is granted in part and denied in part. Evidence or reference to the amount of medical bills paid by an insurer pursuant to a contractual write-off is excluded. However, if Plaintiff testifies that sought treatment under a letter of protection because he did not have the financial means to pay for treatment, or that he delayed receiving treatment because he lacked the financial means to obtain it earlier, Defendants may cross-examine Plaintiff regarding the availability of insurance proceeds to pay for such services.

**IT IS SO ORDERED.**

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent